*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF MEDDIE ALLEN BROWN.

ESTATE OF MEDDIE ALLEN BROWN, by
RANDALL S. BROWN, Personal Representative,

   Appellee,

v

MARK A. FARMER and BARBARA J. BROWN,

   Appellants.

UNPUBLISHED
April 9, 2020

No. 342485
Grand Traverse Probate Court
LC No. 16-033711-DA

*In re* M ALLEN BROWN REVOCABLE TRUST.

M. ALLEN BROWN REVOCABLE TRUST, by
RANDALL S. BROWN, Trustee,

   Appellee,

v

MARK A. FARMER and BARBARA J. BROWN,

   Appellants.

No. 342486
Grand Traverse Probate Court
LC No. 17-034202-TV

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

-1-

In Docket Nos. 342485 and 342486, appellants Mark Farmer (Farmer) and Barbara Brown (Barbara)[1] appeal by leave granted the probate court's interlocutory orders denying Appellants' Objection to Trustee's Petition for Entry of Final Order Dismissing Petition and Case Pursuant to Mediation Agreement, and the probate court's Order Dismissing Petition or Motion for Reconsideration. Docket No. 342485 appeals the orders in respect to the dismissal of the petition to remove the personal representative, and in Docket No. 342486 as it pertains to the dismissal of the petition to remove the trustee. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

The parties, Randall Brown, Barbara Brown, and Mark Farmer, are siblings whose father, the testator Meddie Allen Brown, devised for the assets of his trust to be distributed among them. Randall was appointed Personal Representative of the estate and successor trustee of the trust. Farmer petitioned the probate court in propria persona to remove Randall as personal representative and trustee because he claimed Randall failed to both answer his questions and to keep him informed about the estate. Farmer also alleged undue influence by Randall over the testator such that Farmer and Barbara called the validity of the will into question.[2] The removal petition prompted court-ordered mediation. Randall and Farmer attended the mediation while Barbara did not. Randall and Farmer signed a Settlement Agreement. The Agreement awarded Barbara and Farmer $1,000,000 payments each in exchange for withdrawing their claims against the estate and trust, including dismissal of the removal petition. Randall petitioned to close the estate based on the Settlement Agreement. Barbara and Farmer, without counsel, filed an objection to the petition arguing that Barbara should not be bound to the Settlement Agreement because she was not notified about the mediation and did not sign the agreement. They further argued that the Settlement Agreement should be set aside because the asset inventory Randall filed with the court reported assets of only $1,353,617.85 which was less than the $2,000,000 payments awarded in the Agreement. Randall replied that the funds to pay appellants would come from personal funds he received as sole beneficiary of his father's Fidelity account. This response prompted appellants to assert that the Fidelity account beneficiary form actually indicated distribution to the account owner's descendants and not to just Randall.

Barbara retained counsel and appeared at the objection hearing. The court dismissed the appellants' petition for removal and approved closure of the estate based on the Settlement Agreement. It determined that Barbara was bound by the actions of fiduciary Randall under MCR 5.120 where she had not previously intervened in mediation or appeared for any other court proceedings. It interpreted the Fidelity beneficiary form as the account owner identifying Randall as the primary beneficiary and found any confusion regarding that choice to be governed by the

---

[1] To avoid confusion, appellant Barbara Brown and appellee Randall Brown are referred to by their first names.

[2] While Barbara did not sign the petition for removal, her contention is that Farmer's filing represented her same concerns.

-2-

language of the form that again defaulted to Randall as primary beneficiary. The appellants moved for reconsideration that was denied.

## II. THE SETTLEMENT AGREEMENT

Farmer and Barbara first argue that the Settlement Agreement should be set aside because 1) Barbara did not receive notice of or participate in the mediation and 2) the Settlement Agreement was obtained by fraud, was without adequate consideration, and was impossible to perform. We agree with the first contention, but hold that appellants only prove that the agreement should be set aside as to Barbara, not Farmer. We reject appellants' second contention as to both appellants.

### A. STANDARD OF REVIEW

"[A]ppeals from a probate court decision are on the record, not de novo." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). This Court reviews the probate court's factual findings for clear error and its dispositional rulings for an abuse of discretion. *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Duke Estate*, 312 Mich App 574, 580-581; 887 NW2d 1 (2015) (quotation marks and citation omitted). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006).

The court's decision to enter a settlement agreement is reviewed for an abuse of discretion. *Howard v Howard*, 134 Mich App 391, 396-397; 352 NW2d 280 (1984). So is this Court's review of a probate court's decision on a petition to remove a fiduciary for an abuse of discretion. *In re Conservatorship of Shirley Bittner*, 312 Mich App 227; 879 NW2d 269 (2015).

We review questions of contract interpretation, including settlement agreements, de novo as questions of a law. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). We also review de novo issues involving the interpretation of a court rule. *Michigan Mutual Ins Co v Indiana Ins Co*, 247 Mich App 480, 483; 637 NW2d 232 (2001).

### B. ANALYSIS

### 1. NOTICE OF THE MEDIATION

The probate court found that the Settlement Agreement was binding and enforceable against Barbara under MCR 5.120, which provides:

> The fiduciary represents the interested persons in a contested matter. The fiduciary must give notice to all interested persons whose addresses are known that a contested matter has been commenced and must keep such interested persons reasonably informed of the fiduciary's actions concerning the matter. The fiduciary must inform the interested persons that they may file a petition to intervene in the matter and that failure to intervene shall result in their being bound by the actions of the fiduciary. The interested person shall be bound by the actions of the fiduciary

-3-

after such notice and until the interested person notifies the fiduciary that the interested person has filed with the court a petition to intervene.

Plainly read, MCR 5.120 charges the fiduciary with the responsibility of providing notice of a contested matter to all interested persons. It further creates a continuing obligation for the fiduciary to keep the interested persons reasonably informed of the contested matter. This obligation includes notifying the interested persons of their right to file a petition to intervene in the contested matter and that they could be bound by the actions of the fiduciary. Provisions of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* state a similar obligation for the trustee to "keep the qualified trust beneficiaries[3] reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." MCL 700.7814; see also MCL 700.3705(d)[4].

The probate court erred in finding that Barbara was bound by the actions of the fiduciary (Randall) in negotiating the Settlement Agreement, because she was noticed "all along the way" and chose not to intervene in the mediation. The only notice sent to Barbara regarding the mediation was the probate court's February 22, 2017 letter to all interested parties and the attached Pre-Trial Scheduling Conference Order. Appellee Randall relies on this communication from the court as having fulfilled the requirements of MCR 5.120.[5] The February letter advised that the parties selected mediator John Blakeslee and that mediation must be completed by June 7, 2017. The scheduling conference order provided that a Settlement Conference was scheduled for June 26, 2017. The February letter was sent from the probate court and not the fiduciary as was required by MCR 5.120. It was not followed by any other notice from the fiduciary to keep the interested

---

[3] EPIC defines a "qualified trust beneficiary" as "a trust beneficiary to whom 1 or more of the following apply on the date the trust beneficiary's qualification is determined: (*i*) The trust beneficiary is a distributee or permissible distributee of trust income or principal. . . ." MCL 700.7103(g)(*i*). No party disputes that Barbara is a qualified trust beneficiary.

[4] "That, if the estate is not settled within 1 year after the personal representative's appointment, within 28 days after the anniversary of the appointment, the personal representative must file with the court and send to each interested person a notice that the estate remains under administration and must specify the reason for the continuation of settlement proceedings. If such a notice is not received, an interested person may petition the court for a hearing on the necessity for continued administration or for closure of the estate." MCL 700.3705(g).

[5] Appellee also argues that under MCR 2.411(C)(1) Barbara was not a party required to receive notice of the mediation where the petition to remove appellee as personal representative and trustee was filed by Farmer, only. MCR 2.411(C)(1) requires the mediator to contact the parties to schedule mediation. Appellee states that because Barbara was not contacted by the mediator she was not considered a party to the mediation required to receive notice. Regardless, appellee's argument does not relieve appellee of his duties under MCR 5.120, MCL 700.3705, and MCL 700.7814.

parties reasonably informed. The court's notice did not advise the interested parties of their rights to intervene. MCR 5.120 provides that "[t]he interested person shall be bound by the actions of the fiduciary *after such notice . . . .*" Without the required notices, the interested person, Barbara, was not bound.

The remainder of MCR 5.120 clearly states that the interested person is bound ". . . after such notice and *until the interested person* notifies the fiduciary that the interested person *has filed with the court a petition to intervene.*" (Emphasis added). Barbara, in propria persona, intervened in the contested proceedings on July 6, 2017, by filing an Objection and Response to Trustee's Petition for Entry of Final Order Dismissing Petition and Case Pursuant to Mediation Agreement. Her intervention was within one month of fiduciary Randall's June 13, 2017 petition to settle the estate pursuant to the mediation agreement. Despite the probate court's implication that Barbara's intervention was untimely, there is no temporal requirement in the rule or in case law concerning the time in which an interested person must intervene.[6] The dismissal of Barbara's objections also meant the court never reached the merit of Barbara's challenges to the validity of the will as stated by Farmer in the petition to remove Randall as personal representative and trustee.

The final reason that Barbara is not bound by the settlement agreement is that neither she nor any person with authority to represent her signed the agreement. Under MCR 2.507(G), "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." The Settlement Agreement was not made in open court, but reduced to writing at the mediation. In order to be binding against Barbara it must have been signed by either her or her attorney. MCR 2.507(G). However, neither Barbara nor her attorney signed the Settlement Agreement, and neither Randall nor Farmer signed as a representative of Barbara.

We reject appellee's argument that Barbara is bound to the Settlement Agreement under MCL 700.7411, which concerns the termination and modification of non-charitable trusts, instead of MCR 5.120. Appellee did not raise this contention below, and we decline to consider it in the first instance. *In re Leete Estate*, 290 Mich App 647, 654-655; 803 NW2d 889 (2010). "[A]ppeals from a probate court decision are on the record, not de novo," *In re Temple Marital Trust*, 278 Mich App at 128, and we have no record of the court's ruling on this issue. "We need not address

---

[6] In passing, appellee raises the issue on appeal of whether the probate court correctly applied MCR 5.120. Appellee argues that MCR 5.120 applies when the contested matter is between the fiduciary and a third-party. Appellee does not cite any support for his interpretation of the court rule outside of his personal "understanding of the law." Further, the only case to cite MCR 5.120 makes no such pronouncement or interpretation of the rule suggested by appellee. See *In re Estate of Scarchilli*, unpublished per curiam opinion of the Court of Appeals, issued December 6, 1996 (Docket Nos. 180706, 180736, 184902).

issues first raised on appeal." *Polkton Charter Tp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005).[7]

## 2. FRAUD, CONSIDERATION, AND PERFORMANCE

Next, appellants Farmer and Barbara argue that the Settlement Agreement should be set aside as to both of them because it lacked mutual assent, was fraudulently procured and impossible to perform.

"An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). "Before a contract can be completed, there must be an offer and acceptance." *Pakideh v Franklin Commercial Mortg Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995). "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Eerdmans v Maki*, 226 Mich App 360, 364; 573 NW2d 329 (1997). There is no mutual assent when one party manifests an intent not to be bound by an offer. *Angelo DiPonio Equip Co v State, Dep't of State Hwys & Transp*, 107 Mich App 756, 759–760; 309 NW2d 566 (1981). In order to form a valid settlement agreement, there must also be a meeting of the minds regarding all the material facts. *Siegel v Spinny*, 141 Mich App 346, 350; 367 NW2d 860 (1985). "Legal consideration also is required for a binding contract." *Yoches v City of Dearborn*, 320 Mich App 461, 479; 904 NW2d 887 (2017), app den 501 Mich 1074; 911 NW2d 189 (2018). Consideration is "[s]ome right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other." *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000), quoting Black's Law Dictionary (6th ed), p. 306.

As for Barbara, appellants argue that there was no mutual assent where she had not participated in the mediation and no acceptance of the settlement offer where she had not signed the Settlement Agreement. We agree. In her affidavit, Barbara averred that she was not aware of the mediation's occurrence or the Settlement Agreement until after it was completed and requested that the Settlement Agreement be set aside so that she could participate in the process. There is no evidence that Barbara accepted appellee Randall's offer for her to release her claims against the estate and trust in exchange for $1,000,000. The pleadings before the mediation gave no indication that she would accept such an offer, she was not consulted during the mediation, neither Randall or Farmer signed as her representative to express her assent, and Barbara later expressed a clear intent not to be bound by the offer.

As for Farmer, appellants argue that there was no full disclosure of the Fidelity account for there to be a meeting of the minds between Farmer and Randall. We disagree. The language of the Settlement Agreement required Randall to file an affidavit attesting to full disclosure of the assets of the trust and estate. The agreement specifically exempted full disclosure of the Fidelity

---

[7] For the same reasons, we decline to review appellee's additional new arguments that Barbara is bound to the Settlement Agreement under MCR 2.205(B)(4) and MCL 700.7304.

account, however.  Farmer admits he was aware of the inventory, accountings and financial disclosure submitted by Randall coming into the mediation.  Indeed, the amended inventory was filed on March 8, 2017, and the Settlement Agreement was dated thereafter on May 23, 2017.  Farmer had second thoughts.  "[A] party cannot void a settlement agreement merely because [he] has had a change of heart, nor can he do so merely because [his] assessment of the consequences [of the settlement] was incorrect."  *Clark v Al-Amin*, 309 Mich App 387, 396; 872 NW2d 730 (2015) (quotation marks and citation omitted).  Accordingly, the court's decision to deny setting aside the Settlement Agreement as to Farmer based on lack of mutual assent was not erroneous.

As to both appellants, they argue that the Settlement Agreement should be set aside because it was procured by fraud, lacked considered and was impossible to perform.  "As a general rule, settlement agreements are final and cannot be modified."  *Clark v Al-Amin*, 309 Mich App 387, 395; 872 NW2d 730 (2015) (quotation marks and citation omitted).  "Absent a showing of factors such as fraud or duress, courts act properly when they enforce such agreements."  *Massachusetts Indem & Life Ins Co v Thomas*, 206 Mich App 265, 268; 520 NW2d 708 (1994).  To prove fraud, appellants must show "(1) that the defendant made a material representation; (2) that it was false; (3) that when the defendant made it the defendant knew that it was false, or that the defendant made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that the defendant made it with the intention that it should be acted on by the plaintiff; (5) that the plaintiff acted in reliance on it; and (6) that the plaintiff thereby suffered injury."  *Hord v Envtl Research Inst of Michigan*, 228 Mich App 638, 642; 579 NW2d 133 (1998).  Moreover, "[a] promisor's liability may be extinguished in the event his or her contractual promise becomes objectively impossible to perform."  *Roberts v Farmers Ins Exchange*, 275 Mich App 58, 73–74; 737 NW2d 332 (2007).  "Impossibility of performance may be classified as original impossibility or supervening impossibility. The former is impossibility of performance existing when the contract was entered into, so that the contract was to do something which from the outset was impossible; whereas supervening impossibility is that which develops some time after the inception of the contract."  *Rogers Plaza, Inc v SS Kresge Co*, 32 Mich App 724, 743; 189 NW2d 346 (1971) (quotation omitted).  Although appellants do not specifically state so, their contentions are grounded in original impossibility.

Appellants' arguments are without merit.  Under the Settlement Agreement, appellee Randall promised to pay appellants Farmer and Barbara each $1,000,000, in exchange for appellants' promise to withdraw the petition for removal and release all claims against the estate and trust.  Appellants argue that the reported $1,353,617.85 amended asset inventory must have been a false representation of the total amount of assets if appellee Randall was able to negotiate a settlement more than double what appellants were to receive under the trust.  Appellants' fraud claims are pure conjecture.  The claims were made after appellee Randall filed an affidavit averring that he had disclosed all estate and trust assets and the court's December 21, 2017 order that clearly stated the funds to pay appellants were not coming from the estate and trust assets but from Randall's personal funds.  The court ordered, "Randall S. Brown shall pay from the proceeds of the trust account and from his personal funds, to each of the Interested Parties, Mark A. Farmer and Barbara J. Brown, the sum of One Million ($1,000,000) Dollars each[.]"  There was no factual basis to find that appellee Randall misrepresented the total amount of estate and trust assets.  The understanding was that appellee Randall was to use the funds he received from the Fidelity account to pay appellants.  The fact that Fidelity had already distributed these funds to appellee further

supported a finding that his promise under the Settlement Agreement was possible to perform and supported with adequate consideration.

## III. THE FIDELITY ACCOUNT

Appellants Farmer and Barbara argue that the probate court erred in its interpretation of the Fidelity beneficiary form to find that the proceeds of the Fidelity account were only payable to appellee Randall and not part of the estate. We disagree.

### A. STANDARD OF REVIEW

"[A]ppeals from a probate court decision are on the record, not de novo." *In re Temple Marital Trust*, 278 Mich App at 128. This Court reviews the probate court's factual findings for clear error and its dispositional rulings for an abuse of discretion. *In re Lundy Estate*, 291 Mich App at 352. "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Duke Estate*, 312 Mich App at 580-581 (quotation marks and citation omitted). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak*, 475 Mich at 603.

"The proper interpretation of a contract is a question of law that this Court reviews de novo." *In re Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007).

### B. ANALYSIS

The beneficiary form presented two options:

☐ **Option A.** I (we) hereby designate the person(s) named below as primary beneficiary(ies) to receive the assets remaining in the account listed on this form upon my death, or at the death of the surviving account owned if the account is owned by more than one person. Check the box in the far right column to designate that the share of the named beneficiary should be paid to his or her descendants if the named beneficiary does not survive the account owner (see Designated Beneficiary Agreement for details).

☐ **Option B** - my Descendants. (Individual account owners only. Option B is not permitted for joint accounts. Do not complete the primary beneficiary table in Option A if you elect this option. If both Option A and Option B are selected, Option A will govern the distribution of the account.) I designate My Descendants who are living at the time of my death as primary beneficiary(ies) to receive all of the assets remaining in the account listed on this form upon my death in the manner defined in the Designated Beneficiary Agreement. Fidelity may rely on certification of the identity of the beneficiaries entitled to receive the account from my personal representative, any beneficiary or representative of any beneficiary, or any other person deemed appropriate by Fidelity. (If you wish to designate contingent beneficiaries use the chart above).

The box next to **Option B** was checked, while the box next to **Option A** was not. However, the probate court interpreted the beneficiary form as the account owner also having selected **Option A** because the chart for Primary Beneficiary Designation and Contingent Beneficiary Designation was filled out. **Option B** provided that in the event both **Option A** and **Option B** were selected, **Option A** was to govern.

The court did not err in finding that proceeds of the Fidelity account were not part of the estate. The Fidelity account was a transfer on death (TOD) account. According to MCL 700.6101(1)(a), a nonprobate transfer-on-death account is nontestamentary where the written instrument is intended to pay money owned by a decedent before death to another person after the decedent's death. "A transfer on death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner and the registering entity and this part, and is not testamentary." MCL 700.6309.

We also agree with the probate court's finding that, the decedent either, intended to choose **Option A** or, that from the face of the document it appeared as if the decedent incorrectly chose both options. The box next to **Option B** is clearly checked. However, **Option B** directs the account owner "Do not complete the primary beneficiary table in **Option A** if you elect this option" because under **Option B**, the account owner "designate[s] My Descendants who are living at the time of my death as primary beneficiary(ies)." The last sentence of **Option B** states, "If you wish to designate contingent beneficiaries use the chart above." While the decedent listed a contingent beneficiary, he listed Farmer, who was his son and therefore, a descendant. Under **Option B**, there would be no reason to list a descendant as a contingent beneficiary when the decedent's descendants are already the primary beneficiaries under this option. The fact that the decedent designated both a primary and contingent beneficiary suggests that the decedent intended to designate specific persons under **Option A**. Further suggestive that the decedent intended to choose **Option A** was that he chose to give 100% of his Fidelity shares to the primary beneficiary, or if that designation failed, the contingent beneficiary. The decision to give 100% of the account to one named beneficiary obviates the interpretation that the decedent intended for the proceeds to be shared by his descendants. The reason that **Option B** is checked is unknown. However, when it appears that the account owner selected both **Option A** and **Option B**, Fidelity's designated beneficiary form plainly reads that **Option A** governs. Thus, the probate court did not err.

## IV. MOTION FOR RECONSIDERATION

Appellants Farmer and Barbara argue that the probate court erred in denying their motion for reconsideration when the court failed to genuinely reconsider the issues raised and just relied on its prior rulings.

## A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision on a motion for reconsideration. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228, lv den 481 Mich 916 (2008). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak*, 475 Mich at 603.

## B. ANALYSIS

-9-

MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

"Palpable" is defined as " '[e]asily perceptible, plain, obvious, readily visible, noticeable, patent, distinct, manifest.' " *Stamp v Mill Street Inn*, 152 Mich App 290, 294; 393 NW2d 614 (1986), quoting Black's Law Dictionary (5th ed), p. 1000.

In their motion for reconsideration, appellants Farmer and Barbara requested the probate court reconsider the portions of its order that the Settlement Agreement was binding against both appellants and that the proceeds of the Fidelity account were payable only to appellee Randall and were not a part of the estate. The appellants argued that the probate court committed palpable error in finding that Barbara was bound to the Settlement Agreement when the personal representative did not give Barbara notice of the mediation. In its order denying the motion for reconsideration, the court reiterated its finding at the motion hearing to set aside the mediation that Barbara was bound to the actions of the fiduciary under MCR 5.120 for failure to intervene. Again, the court evaded analyzing the issue of notice and for this reason, the court committed palpable error. Had the court reviewed appellee Randall's obligations to notify and keep Barbara informed under MCR 5.120 and EPIC, a different disposition would have resulted. The appellants also argued that the court committed palpable error concerning its interpretation of the Fidelity beneficiary form when "a straightforward analysis of the Beneficiary Form clearly dictates that the funds held in the Fidelity Accounts are to be paid to the Estate of Meddie Allen Brown." Appellants did not identify palpable error, "but rather questioned the trial court's reasoning and its decisions on issues of law already decided by the court." *Herald Co, Inc v Tax Tribunal*, 258 Mich App 78, 83; 669 NW2d 862 (2003), abrogated on other grounds by *Speicher v Columbia Tp Bd of Trustees*, 497 Mich 125; 860 NW2d 51 (2014). Even so, the court did not err in finding that the decedent intended to choose **Option A** and that **Option A** was the default in the event the decedent chose both **Option A** and **Option B**.

-10-

## V. CONCLUSION

In sum, the probate court's finding that Barbara was bound by the Settlement Agreement was erroneous.

In Docket Nos. 342485 and 342486, we hold that the probate court abused its discretion in granting Randall's petition for Entry of Final Order Dismissing Petition and Case Pursuant to the Settlement Agreement as it pertained to Barbara. We therefore vacate those portions of the order that the Settlement Agreement is binding and enforceable upon Barbara and remand this matter for further proceedings to address Barbara's objections. We do not retain jurisdiction. We affirm the probate court's order in all other respects.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause